■ GRUMMAN AMERICAN AVIATION CORPORATION, Appellant, v INTERNATIONAL BUSINESS MACHINES CORPORATION, Respondent.—In an action for a declaratory judgment, plaintiff appeals from a judgment of the Supreme Court, Westchester County, dated December 27, 1979, which, after a nonjury trial, declined to entertain jurisdiction and dismissed the complaint "without prejudice". Judgment reversed, on the law, with costs, and it is declared that: "(1) Pursuant to Article II (paragraph [d]) of the agreement executed between the defendant International Business Machines Corporation (IBM) and the plaintiff's predecessor in interest, on September 27, 1966, defendant is obligated to pay any judgment, except such judgments which are attributable to negligent manufacture, that may be entered against plaintiff, Grumman American Aviation Corporation (Grumman), arising out of the crash of a Gulfstream II aircraft N720Q on June 24, 1974; (2) Said Article II (paragraph [d]) does not obligate defendant to indemnify plaintiff for that loss or liability which is imposed upon plaintiff by virtue of the negligent manufacture of the Gulfstream II aircraft sold to defendant corporation, and (3) Said Article II (paragraph [d]) neither requires defendant to defend

plaintiff, nor obligates defendant to pay any costs or expenses incurred by plaintiff in any actions arising out of the crash of the Gulfstream II aircraft N720Q on June 24, 1974." Grumman commenced this action for ·a declaration that IBM must defend and indemnify Grumman for liability arising from a crash of a Gulfstream II aircraft manufactured by Grumman, owned by IBM, and operated by a Grumman pilot in the course of giving instruction to two IBM employees. At issue is the applicability of an indemnification clause appearing in paragraph (d) of article II of the sales agreement between Grumman's predecessor in interest and IBM, which provides that: "(d) If, after acceptence of the aircraft by Buyer's representative as provided above, the aircraft remains in, or is returned to, Grumman's care, custody or control for pilot training, ferry flights or for any other purpose, Buyer shall indemnify Grumman and save Grumman harmless from any loss or liability arising out of a flight performed by Grumman or with a Grumman pilot in command where the flight was performed at the request of Buyer." After two motions for summary judgment by Grumman, and one cross motion by IBM to dismiss the complaint, were denied, a nonjury trial was conducted. Trial Term subsequently issued a decision holding that since the subject of the declaratory judgment action would necessarily be resolved in the underlying wrongful death actions pending in Federal court against Grumman, in which IBM has been joined as a third-party defendant, it would be an abuse of discretion to entertain jurisdiction over an action for a declaratory judgment. Accordingly, the complaint was dismissed, *sua sponte,* without prejudice. The declaratory judgment action was commenced prior to the institution of the third-party action in Federal court. The nature of the controversy, construction of an indemnification agreement and declarations concerning IBM's obligation to defend and indemnify Grumman, is a proper subject for declaratory relief. Trial Term's decision to decline to entertain jurisdiction was made after a full trial, approximately four years after the action was commenced, after the Federal court wrongful death actions had been settled, and in the absence of any such request for relief by IBM. Until Trial Term's decision, the parties and the court had apparently acceded to the propriety of declaratory relief (cf. *Sanderson v Newark Ins. Co.,* 20 AD2d 961). Certainly, construction of the indemnification clause is a proper subject of New York law and a declaration construing the clause will eliminate substantial issues from the Federal court litigation. Although a court has inherent discretion to decline to make a declaration, such discretion must be timely exercised. No purpose will now be achieved by compelling the parties to relitigate these issues when there is already a complete record available for adjudication. It was, therefore, improper to have dismissed the complaint, *sua sponte,* at this late stage in the action. The final judgment dismissing the complaint having been entered after the establishment of a full record in a nonjury trial, it is appropriate that we make a determination on the merits (see *Bernardine v City of New York,* 294 NY 361; *Greater N. Y. Mut. Ins. Co. v Perry,* 6 AD2d 432, app dsmd 7 NY2d 718). Contrary to IBM's contention, it is plain that the training flight on which the accident occurred was within the scope of the contractual indemnification clause. The clause unequivocally applies whenever, after acceptance by IBM, the aircraft is returned to Grumman's custody or control and liability arises from a flight, performed by Grumman or with a Grumman pilot in command where the flight was performed at the request of IBM. The clause contains neither a limitation of time nor a limitation of purpose. More difficult is determining the intended scope of indemnification. Grumman contends that the clause includes indemnification for its own negligence whereas IBM alterna-

tively argues that Grumman's negligence is not included, and if included, then indemnification is limited to operational negligence as distinguished from negligent manufacture. The latter distinction is significant in context of IBM's theory that the crash occurred because of a latent product defect. Interpretation of the indemnification clause must be made in the context of a general analytical framework which "frowns upon contracts intended to exculpate a party from the consequences of his own negligence" *(Gross v Sweet,* 49 NY2d 102, 106). The general abhorence of agreements which seek to exculpate a party from liability for his own negligent acts (see *Mauro v McCrindle,* 70 AD2d 77) has resulted in a stringent standard by which such agreements are measured. This standard requires that the exculpatory purpose be unmistakably intended and expressed in unambiguous terms which readily convey the incontrovertible understanding that one party is relieved of liability for that party's negligence and that the obligation to indemnify is unequivocally and absolutely imposed on the other party *(Gross v Sweet,* 49 NY2d 102, 107, *supra; Levine v Shell Oil Co.,* 28 NY2d 205; *Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153). Furthermore, to the extent that there is an ambiguity, it must be resolved against Grumman, whose predecessor in interest drafted the form agreement. Grumman also bears the burden of proof. This results both from Grumman's status as plaintiff and from Grumman's status as the party who is asserting an interpretation which is contrary to preferred policy. The essential language of the subject agreement is that IBM "shall indemnify Grumman and save Grumman harmless from any loss or liability arising out of a flight performed by Grumman". The agreement was negotiated at arm's length by representatives of two obviously sophisticated business giants. There is no threat of unconscionability of overreaching and the clause was probably intended as a means of "allocating the risk of liability to third parties between themselves, essentially through the employment of insurance" *(Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 161, *supra; cf. Levine v Shell Oil Co.,* 28 NY2d 205, *supra).* In such circumstances, "the general rule of strict judicial construction has been somewhat liberalized" to the extent that the unmistakable intent of the parties may be satisfied by less precise terms *(Gross v Sweet,* 49 NY2d 102, 108, *supra; Levine v Shell Oil Co., supra,* pp 212-213). Although the clause in issue appears to be all inclusive, the parameters of the indemnification clause become clear only in context of the types of liability which may be imposed upon Grumman. Other than questions of negligent repair or maintenance which are not here raised, after delivery and acceptance of the aircraft by IBM, there are two general situations when Grumman may be liable to an injured party for damages. The first is a loss arising from operational negligence, such as pilot error. The second is a loss arising from the negligent manufacture of the aircraft, i.e., a latent product defect. The indemnity clause, although not specifically mentioning negligence, is sufficiently broad to encompass the imposition of liability resulting from operational negligence. The clause expressly refers to any loss arising out of the flight of the aircraft. Surely the parties anticipated the most common situation of the loss of life or limb resulting from the crash of the aircraft. Furthermore, the predicating of indemnification on the circumstances of a Grumman controlled or piloted flight necessarily indicates that the clause was directed at operational negligence which by its very nature would expose Grumman to liability only when Grumman was in control of the aircraft. The exclusion of operational negligence from the scope of the indemnity clause would effectively nullify the entire clause. "Surely, this could not have been the intent of the

parties" *(Levine v Shell Oil Co.,* 28 NY2d 205, 213, *supra),* nor should we adopt a construction which will render the agreement ineffective (cf. McKinney's Cons Laws of NY, Book 1, Statutes, § 144). Even in the absence of a specific reference to operational negligence, the unequivocal correlation between such negligence and the control of the aircraft during a flight, a requisite of invoking the indemnity clause, unmistakably implies an intent to compel IBM to indemnify Grumman for the latter's operational negligence. To this extent, the subject clause is valid and enforceable (see *Levine v Shell Oil Co.,* 28 NY2d 205, *supra; Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, *supra).* By contrast, there is no such correlation between loss arising from negligent manufacture and control of the aircraft during flight. The negligent manufacture of an aircraft which results in a latent product defect and the likely consequences of disaster, may become manifest at any time. Hypothetically, if the subject aircraft crashed because of a product defect when the plane was being operated by an IBM pilot on an IBM flight, without any involvement of Grumman, other than its status as manufacturer, it is clear that: (1) liability might be imposed upon Grumman and (2) IBM would have absolutely no obligation to indemnify Grumman under the clause here in issue. This latter conclusion stems from the limitation of the clause's applicability to only those flights "performed by Grumman or with a Grumman pilot in command where the flight was performed at the request of [IBM]". The fortuitous circumstances of the defect becoming manifest when Grumman controlled the aircraft cannot insulate Grumman from liability. The lack of any necessary correlation between a loss arising from a latent product defect and Grumman's control of the aircraft during a flight, creates an ambiguity concerning the intent of the parties that the indemnification clause extend to loss arising from negligent manufacture. Such ambiguity, on the face of the agreement, and unresolved after trial, in which the staff attorney, who examined the agreement for IBM, testified that she did not contemplate that negligence was included in the clause and that it was not the policy of IBM to enter into such exculpatory agreements, necessarily precludes a finding of unmistakable intent which is a prerequisite for enforcing such exculpatory agreements *(Gross v Sweet,* 49 NY2d 102, *supra).* Accordingly, the indemnification clause must be limited to that sphere of negligence which may be unequivocally inferred from the contract language, i.e., operational negligence. Hopkins, J. P., Lazer, Rabin and Margett, JJ., concur.