Israel STAROBIN and Ida Starobin, Plaintiffs,

v.

RANDOLPH COMPUTER CORPORATION, Randolph Capital Corp., Bancal Leasing Co., Inc., Bank of California, National Association, The Travelers Corp., and Rockford Safety Equipment Co., Defendants.

BANCAL LEASING CO., INC., Bank of California, National Association, Third-Party Plaintiff,

v.

INSTRUMENT SYSTEMS CORPORATION and Niagara Machine & Tool Corporation, Third-Party Defendants.

INSTRUMENT SYSTEMS CORPORATION, Second Third-Party Plaintiff,

v.

LIGHTRON OF CORNWALL, INC., Second Third-Party Defendant.

BANCAL LEASING COMPANY, INC., Bank of California, National Association, Third Third-Party Plaintiffs,

v.

LIGHTRON OF CORNWALL, INC., Third Third-Party Defendant.

No. 86 Civ. 1856 (LBS).

United States District Court, S.D. New York.

July 14, 1988.

---

Julien & Schlesinger P.C., New York City, Stuart A. Schlesinger, Jeffrey A. Lichtman, of counsel, for plaintiffs.

Stroock & Stroock & Lavan, New York City, Brian M. Cogan, Roland G. Riopelle, of counsel, for Randolph Computer Corp., Randolph Capital Corp. and The Travelers Corp.

Frederick A. Murphy Associates, Goshen, N.Y., Sheila Rosenrauch, of counsel, for

Bancal Leasing Co. and Bank of California, National Assn.

Kral, Clerkin, Redmond & Ryan, New York City, Bennett Lofaro, of counsel, for Lightron of Cornwall, Inc.

Garbarini, Scher & DeCicco P.C., New York City, Christopher Hough, of counsel, for Instrument Systems Corp.

Gordon & Silber, New York City, Peter T. Neill, of counsel, for Niagara Mach. & Tool Works Corp.

## OPINION

SAND, District Judge.

### I. STATEMENT OF FACTS

This is a third-party suit for indemnification for attorneys' fees, growing out of a products liability action. The Plaintiff, Israel Starobin, was allegedly injured by a power press in October 1985. He brought suit in July 1986 against Randolph Computer Corp. ("RCC") and Bank of California ("BanCal"), financiers whom he believed to have been prior owners of the machine under a lease/purchase agreement with Instrument Systems Corp. ("ISC"). RCC, which had in 1971 entered into the leases with ISC, in 1973 contracted to transfer to BanCal all or substantially all assets of its subsidiary, Randolph Capital Corp., including these leases. *See* Deposition of Nathan Snyder, former Executive Vice President of RCC, Ex. F to Affidavit of Roland G. Riopelle, Attorney for RCC, dated Jan. 26, 1988, at 25; Agreement between RCC and BanCal, dated March 19, 1973, Ex. 2 to Snyder Dep. ISC used and ultimately purchased the equipment designated in the leases, and in 1980 sold that equipment to its former subsidiary, the now bankrupt (*see* Affidavit of Stuart A. Schlesinger, Attorney for Israel Starobin, dated March 28, 1988, at 2 and at Ex. A) Lightron of Cornwall, Inc., Plaintiff's employer at the time of the accident.

After spending more than a year in the pursuit and defense of the underlying action, the parties discovered that the power press involved in the incident was not among the pieces of equipment covered by the leases in question, and was in no way connected with RCC or BanCal. The suit was dismissed by stipulation. Defendants RCC and BanCal sought sanctions against the Plaintiff under Rule 11, and this Court denied that motion in an Opinion dated April 26, 1988.

RCC and BanCal now assert that, although they bear no liability to Plaintiff under the leases, the action arose under the leases and so the indemnification clause in the leases should apply to the attorneys' fees incurred in the action. Therefore, according to RCC and BanCal, ISC is liable for those fees.

ISC replies that, since the machine at issue was not connected with the leases, the indemnification provision in the leases is irrelevant. ISC further argues that this Court does not have subject matter jurisdiction over this third-party action; that it was not the intent of the parties that the indemnification provision survive the lease term; and that it was not the intent of the parties to require ISC to indemnify anyone who was not a party to the lease. (This last argument is directed against BanCal, which was not a party to the leases, but rather obtained its interest in them by assignment from RCC.)

As an alternative to indemnification by ISC, RCC and BanCal also assert claims against each other for indemnification under provisions of their own agreement.

### II. DISCUSSION

#### A. JURISDICTION

■ The parties disagree as to whether diversity jurisdiction exists over this third-party claim. Irrespective of the existence of independent jurisdiction, the Court will exercise its ancillary jurisdiction under Rule 14 of the Fed.R.Civ.P. to determine who is responsible for attorneys' fees here. At issue are the applicability and meaning of indemnity clauses in the leases and agreements involved in the underlying case. As noted, the Court has previously determined that Rule 11 sanctions should not be applied against Plaintiff. The Court finds that judicial economy and convenience

will be served by its retention of these indemnification claims, whether or not independent federal jurisdiction exists over them. *See* 6 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure, § 1444 at 234–37 (1971).

## B. RCC'S CLAIM AGAINST BANCAL

[2] Under California law, which applies to the agreement transferring the leases from RCC to BanCal, "indemnity agreements are to be interpreted under the same rules governing other contracts with a view to determining the actual intent of the parties." *Ralph M. Parsons Co. v. Combustion Equip. Assoc.*, 172 Cal.App.3d 211, 218 Cal.Rptr. 170, 176 (1985) (*citing Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 632–33, 532 P.2d 97, 104, 119 Cal.Rptr. 449, 456 (1975)). Where there is no conflicting extrinsic evidence as to the meaning of an indemnity agreement, its interpretation is a matter of law, to be determined by the court. *See Parsons v. Combustion Equip.*, *supra*, 218 Cal.Rptr. at 179.

Under ¶ 1.B(ii)(a) of the agreement, BanCal agreed to assume "[a]ll liability of the lessor under the Leases ... accruing after Closing Date." In ¶ 15 the parties agreed, in relevant part, that:

> [e]very agreement, warranty or representation herein referred to shall survive the Closing Date and the consummation of the within transaction, and the party making any such agreement, representation or warranty agrees to indemnify and hold harmless any party for whose benefit such agreement, representation or warranty is made against any and all losses, damages, liabilities or expenses (including reasonable attorney's fees), resulting from any material breach of any such agreement, representation or warranty, including any such expense of enforcing or collecting indemnification.

The closing date for this transaction was in 1973, and BanCal must indemnify RCC against any liability accruing under the leases after that date. "All liability ... under the Leases" under ¶ 1.B(ii)(a) must, in the context of an agreement for the sale

of all or substantially all assets of the division, and in the light of ¶ 15, be understood to include not only liability for injury but also liability for attorneys' fees occasioned by litigation over the leases.

Were we dealing with a more limited transaction, for example, the leasing of a single piece of equipment, one might plausibly contend that expenses relating to another piece of equipment was not a liability "under the leases" and therefore not assumed by Bancal. However the essense of this transaction indicates that the phrase "[a]ll liability ... under the Leases" was intended to transfer to Bancal financial responsibility for any matters relating to the leases, individually or collectively. Here, the error that gave rise to this controversy arose from the volume of the equipment covered by the leases and involved in the transaction. It is therefore reasonable to say that the expense incurred in defending this suit was a "liability ... under the Leases." It follows therefore that Bancal's refusal to assume such liability is a material breach of its agreement to do so and triggers the indemnity provision. The confusion over the machinery, and the institution of the suit, arose in 1985–1986, after the closing date of the agreement. Thus, under the terms of the agreement, BanCal must bear the cost of attorneys' fees incurred by RCC in defending this action and in seeking this indemnification.

## C. BANCAL'S CLAIM AGAINST RCC

■ BanCal's motion for summary judgment against RCC on BanCal's claim that RCC must indemnify BanCal under their agreement is denied. It is based upon ¶ 15 (the indemnification clause quoted in Part II.B. above), and upon ¶ 4(F), which reads in relevant part:

> All items of Equipment are at least in the condition of repair and operation the lessor is required to maintain by the applicable leases (if any such obligation there be) and none are, to the knowledge of Randolph or Travelers [sole shareholder of RCC at that time], unsuitable for their intended use or inoperable.

While these clauses could reasonably be construed as a promise by RCC to indemnify BanCal if any of the transferred equipment is in fact defective, they do not come into effect with respect to this action because the *equipment* alleged to be defective was never owned, leased out, or sold by RCC. (The power press that caused the injury of course was not part of the *equipment* covered by the agreement between RCC and BanCal, although the *leases* were covered by that agreement.)

## D. INDEMNIFICATION UNDER THE LEASES

### Mootness

■ Third–Party Defendant ISC asserts that under New York law, which applies to the leases, the claim for indemnification under the leases must be dismissed as moot since there is no basis for liability in the main action. The cases ISC cites to support this proposition are inapposite: they involve claims for indemnification that are in fact mooted by the lack of liability because the only claims asserted there are for amounts that would be paid out to satisfy judgments against the defendants in those cases. *See Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982); *Arcon Corp. v. Liberty Mutual Ins. Co.*, 591 F.Supp. 15, 18–19 (M.D. Tenn.1983); *Leach v. Bishop Bros. Auto Auction, Inc.*, 441 F.Supp. 98, 100 (N.D. Ga.1977), *rev'd on other grounds*, 624 F.2d 34 (5th Cir.1980). Here the claims are specifically for attorneys' fees, which are actual expenses that RCC and BanCal claim are covered by the indemnity clause in the leases with ISC.

While an operative factor here is that neither RCC nor its assignee BanCal could be held liable to Plaintiff since neither ever had any connection with the power press that caused the injury, the issue of responsibility for attorneys' fees under the leases nonetheless remains because of the breadth of the indemnification clause in those leases. It is not necessary that an indemnitee have sustained actual damages in the main action in order to be entitled to enforce an agreement as to indemnification for attorneys' fees. *Blair v. County of Albany*, 127 A.D.2d 950, 512 N.Y.S.2d 552, 553 (3d Dep't 1987).

### Indemnification against a party's own negligence

■ ISC also claims that the indemnification clause does not provide for the indemnification of the indemnitee against the indemnitee's own negligence. ISC presumably makes this argument in the expectation that it could show that the Defendants were negligent in failing to recognize sooner that the power press involved in the incident was not covered by the leases, resulting in increased attorneys' fees expended in this action.

It is true that an agreement that exculpates a party from the consequences of its own negligence is subject to close judicial scrutiny. *L.B. Smith, Inc. v. Bradley & Williams, Inc.*, 88 A.D.2d 782, 451 N.Y.S. 2d 525, 526–27 (4th Dep't 1982), *mod. on other grounds*, 58 N.Y.2d 672, 458 N.Y.S. 2d 525, 444 N.E.2d 989 (1982); *Grumman American Aviation Corp. v. International Business Machines*, 77 A.D.2d 582, 429 N.Y.S.2d 921, 923 (2d Dep't 1980).

Some cases suggest that when the parties are sophisticated business entities that have entered into an arms-length transaction, "[i]t suffices that the agreement between the parties connotes an 'intention to indemnify [which] can be clearly implied [sic] from the language and purposes of the entire agreement.'" *Hogeland v. Sibley, Lindsay & Curr Co.*, 42 N.Y.2d 153, 160, 366 N.E.2d 263, 266, 397 N.Y.S.2d 602, 606 (1977) (*quoting Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 153, 297 N.E.2d 80, 82, 344 N.Y.S.2d 336, 339 (1973)); *see Grumman v. I.B.M.*, 429 N.Y. S.2d at 923–24; *Smith v. Bradley & Williams*, 451 N.Y.S.2d at 527–28 (Simons and Schnepp, JJ., dissenting).

Other cases have imposed a more stringent standard, for example requiring "unmistakable language" that "unequivocally and absolutely" imposes the obligation to indemnify a party for its own negligence. *See Smith v. Bradley & Williams*, 451 N.Y.S.2d at 526–27.

Here there has been no suggestion that this was other than an arms-length transaction between business parties of roughly equivalent bargaining power, nor any suggestion of overreaching. Nonetheless, any ambiguities in an indemnification clause of this nature must be resolved against the party that drafted the agreement. *Smith v. Bradley & Williams, supra,* 451 N.Y.S. 2d at 527; *Grumman v. I.B.M., supra,* 429 N.Y.S.2d at 924. It was RCC that drafted these leases.

We find, however, that the language of the indemnification clause contains no ambiguities on this point, and meets even the strict standard of an "unequivocal" expression of the parties' intent to provide for indemnification of the indemnitee's own negligence. That intent is manifest in the following language:

> 12. INDEMNIFICATION: ... Lessee assumes, and agrees to indemnify RCC against and save it harmless from, all risk and liability whatsoever (whether or not arising out of (i) the negligence, passive or otherwise, of RCC or any agent of employee of RCC, or (ii) any defect or defects in any of the Equipment) arising from, or incurred in connection with, the use, operation or storage of the Units or any of them, including reasonable attorneys' fees and disbursements in connection therewith and whether or not covered by insurance, for injury to, or death of, persons and damage to property, whether such persons be employees of RCC or lessee or third parties and whether such property be that of RCC or Lessee or another or others.

Equipment Lease Agreements of Jan. 19, 1971 and Feb. 23, 1971 between RCC and ISC, Ex. A to Riopelle Affid., *supra.*

*Does the indemnity survive the leases?*

█ ISC further challenges the claim for indemnification by asserting that the parties never intended that the indemnification provision survive the lease. We have been directed to no specific language expressing that intent, and we have seen no affidavits as to that issue. However, we believe that the intent that indemnity should survive the term of the lease must be derived from an understanding of the context of the entire agreement.

The language of the leases makes very clear that the lessor, then RCC, is a financier with only a titular interest in any machinery covered by the leases. As between the parties, it is the lessee who is to bear all risk of liability for any negligence, product defects, etc. Given that such sale-leaseback-type arrangements are legal and that agreements and leases embodying them are enforceable, a Court must simply look to the intent of the parties in construing such agreements and leases.

It is the opinion of the Court that the entirety of the leases here, and particularly of the indemnity clause therein, manifest an intent that the lessor, RCC (and thus its assignee, BanCal), should not shoulder any of the expenses of any potential liability arising out of the leases, including any attorneys' fees with respect to any litigation arising out of the leases. While this litigation arose out of a mistake as to whether a certain machine was among the machinery covered by the leases in question, it arose from and was incurred in connection with the use, operation, or storage of the Units that *are* designated in the leases since it is because of their existence that the confusion arose. It is thus undeniable that with respect to the involvement of RCC and BanCal, this litigation arises out of the leases, and so the attorneys' fees they have expended in the litigation are covered by the indemnification clause.

The argument that ISC should be relieved of the duty of indemnification because of the termination of the leases and ISC's purchase of the machinery covered by the leases at the end of the lease periods is illogical, as it suggests that the parties intended that RCC (and thus BanCal) would become liable under the lease at the moment it lost any interest in the machinery covered by the lease. We do not believe that such was the intent of the parties.

*Assignment of the indemnity*

█ ISC claims that there is no lease provision that provides for indemnification

by ISC of an assignee of RCC. However, we note that Clause 16 states, in relevant part:

16. ASSIGNMENT BY RCC: Lessee understands and acknowledges that RCC has entered into this lease in anticipation of its being able to assign or mortgage its interests under this Lease and in the Equipment to one or more banks or other lending institutions or lenders (hereinafter collectively "the Assignee") and that the Assignee will, in entering into such transaction with RCC, be acting in reliance upon, and entitled to the benefits of, this paragraph 16. Accordingly, Lessee agrees with RCC and with the Assignee (for whose benefit this covenant is expressly made) that (i) RCC may assign, pledge, mortgage, transfer or otherwise dispose of, either in whole or in part, all of its rights and interests in and to the Equipment and as lessor hereunder, without any notice to, or consent of, Lessee....

It is the Court's understanding of the agreement between RCC and BanCal that RCC did in fact transfer all of its interest in the leases to BanCal. *See* ¶ 1A(i)(a) of the Agreement between RCC and BanCal (assigning all rights of the lessor under leases between RCC and ISC to BanCal.) Thus it transferred to BanCal its right to indemnification from ISC, and ISC must indemnify BanCal for all of its expenditures arising out of this litigation, including BanCal's indemnification of RCC.

*Attorneys' fees on third-party claim*

 We agree with ISC, however, that under New York law it is not required to pay the attorneys' fees incurred in RCC's and BanCal's prosecution of their third-party claims against ISC. *Lavorato v. Bethlehem Steel Corp.*, 91 A.D.2d 1184, 459 N.Y. S.2d 170 (4th Dep't 1983).

### III. CONCLUSION

RCC's motion for summary judgment on the issue of indemnification by BanCal is granted. BanCal's motion for summary judgment on the issue of indemnification by RCC is denied. BanCal's motion for summary judgment on the issue of indemnification by ISC is granted, except as to payment of attorneys' fees incurred in the prosecution of the third-party action against ISC. The case is closed.

SO ORDERED.