Carr v Champagne Trucking (2004 NY Slip Op 50084(U))

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

[*1]

Carr v Champagne Trucking

2004 NY Slip Op 50084(U)

Decided on February 19, 2004

Supreme Court, Wayne County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 19, 2004

Supreme Court, Wayne County
MONTE R. CARR, Plaintiff,
againstCHAMPAGNE TRUCKING, INC., Defendant. CHAMPAGNE TRUCKING, INC., Defendant and Third-Party Plaintiff, PIERCE ENTERPRISES, Third-Party Defendant.
Index No. 52572

FOLEY & FOLEY (James F. Foley, Esq., of counsel) Attorneys for the Plaintiff
LAW OFFICES OF LAWRENCE M. RUBIN, (Destin C. Santacrose, Esq., of counsel) Attorneys for Defendant and Third-Party Plaintiff Champagne Trucking, Inc.
PETRONE & PETRONE, P.C. (James H. Cosgriff, III, of counsel) Attorneys for Third-Party Defendant Pierce Enterprises


John B. Nesbitt, J.
Is defendant and third-party plaintiff Champagne Trucking ("Champagne") entitled to summary judgment against third-party defendant Pierce Enterprises ("Pierce") directing Pierce to defend Champagne in the underlying action and indemnify it for any damages recovered? The legal principles applicable to deciding this issue are undisputed, as are the facts necessary to do so as presented upon this motion. Champagne and Pierce, however, disagree as to the result compelled when the law engages the facts of this case on the issue of indemnification. The Court finds that the broad indemnification agreement entered into between Champagne and Pierce embraces the claim against Champagne asserted in the underlying action. Consequently, the Court holds that Pierce must defend and indemnify Champagne regarding that claim.
The underlying claim giving rise to the indemnification dispute between Champagne and Pierce stems from the injury sustained by plaintiff Monte Carr on the morning of August 28, 2001, at a landfill in Chaffee, New York. Carr was employed by Pierce, and in the course of that employment, had been assigned certain duties under a contractual arrangement between Pierce and Champagne. That arrangement was one for motor carrier services whereby Pierce provided drivers and tractors to haul Champagne's cargo in Champagne's trailers. Carr alleges that he was so engaged on August 28, 2001, at the Chaffee landfill when he was standing on a ladder rung affixed to a [*2]trailer. Carr ascended to the ladder rung in order to reach the top of the trailer to remove a tarp. The ladder rung allegedly broke off causing Carr to fall to the ground with resulting injury.
Carr brought this suit against Champagne seeking monetary damages, alleging that his injury was caused by the defective ladder rung, the result of Champagne's negligence in properly equipping and maintaining the trailer for its intended use. Champagne then instituted this third-party action against Pierce based upon the indemnification provision found in its written contract with Pierce for motor carrier services. That contract, dated July 21, 1997, at paragraph 6 provides:

6. Indemnification. Carrier [Pierce] shall indemnify and hold harmless Champagne, its shippers, receivers, consignors, consignees and customers, from all losses, damages, expenses, actions, suits, liabilities, and claims for injury to persons, including injuries resulting in death, and damage to property or cargo arising out of or in connection with the transportation of the property or cargo of Champagne or its shipper, receiver, consignors, consignees and customers hereunder.The contract further provided in paragraph 8(c):

8(c). Liability insurance. Carrier [Pierce] agrees to maintain liability insurance with a minimum of $750,000 per occurrence to protect Champagne, or its shippers or receivers, from any action that can be taken against them resulting from the services provided by the Carrier [Pierce], its employees or agents. Carrier [Pierce] shall cause its insurance carrier to forward forthwith to Champagne a standard Certificate of Insurance listing Champagne as an additional insured and shall require the insurance carrier to give Champagne notice thirty (30) days prior to cancellation.Champagne argues that this contract was in effect at the time of plaintiff's accident, that plaintiff's claim is one "arising out of or in connection with the transportation of the property or cargo of Champagne," and consequently is expressly embraced by the indemnification clause of the contract. While admitting the existence of the contract at the time of the accident, Pierce disputes that the indemnification provision operates to impose any contractual obligation upon Pierce to defend and indemnify Champagne regarding plaintiff's claim. Pierce alleges that Champagne owned, maintained, and repaired the trailer from which plaintiff fell. Pierce further alleges that not only was it not responsible for repairing and maintaining the trailer, but that its sole contractual obligation regarding Champagne's trailers was to haul them with Pierce drivers and tractors.[FN1] These trailers were under Champagne's control except when being hauled by Pierce. That being the case, Pierce argues that Champagne is seeking to use the indemnification clause to shift to Pierce the consequent liability for any negligence on the part of Champagne regarding the condition of the trailer from which plaintiff fell. Governing law, argues Pierce, does not allow that result given the particular indemnification provision at issue in this case and the facts underlying plaintiff's claim.
[*3]Without gainsaying that the law of indemnification can be "a vast and complicated subject" (Perillo, Calamari and Perrillo on Contracts §17.8 [5th ed. 2003]), we are confronted here with a narrow issue governed by a well-developed body of decisional law. At the outset, it is useful to frame discussion in the context of the broad (and sometimes conflicting) principles of law and underlying public policies that animate doctrinal development in this area. On the one hand, the concept of "freedom of contract"- the right of parties to contract as they please for lawful purposes - has been and remains a basic canon of contract law (see Williston, Freedom of Contract, 6 Cornell L.Q. 365 [1921]). On the other hand, no less a canon of tort law is the principle that "persons should be liable for their wrongful or negligent acts. An individual who by intentional or negligent misconduct causes an injury, is at fault and is liable therefor" (Mauro v McCrindle, 70 AD2d 77, 81-82 [2nd Dept 1979][Rabin, J.][discussing this principle as underlying quasi-contractual rules of indemnification between joint tortfeasors]). The normative justifications for both canons are evident. One encourages socially positive activity (economic), the other discourages socially harmful activity (injury to person or property).
The law regarding exculpatory/indemnity contracts reflects the judiciary's reconciliation of these canons when they conflict. One method of reconciliation is categorical rules defining those cases where the tort canon always trumps the contract canon. In doing so, the courts distinguish between the type of contract as well as the type of tortious conduct at issue. Exculpatory contracts are those that "typically deprive a contracting party of the right to recover for damages suffered as the result of the exonerated party's tortious act," in contrast to "indemnity contracts that simply shift the source of compensation without restricting the injured party's ability to recover" (Austro v Niagara Mohawk Power Corporation, 66 NY2d 674, 676 [1985]. Exculpatory contracts are unenforceable as contrary to public policy to the extent they negate liability for injury caused either intentionally or through gross negligence (see Gross v Sweet, 49 NY2d 102, 106 [1979][Fuchsberg, J.]; Restatement [Second] of Contracts §195)[FN2]. Indemnity contracts, on the other hand, are invalid on public policy grounds "only to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury" (Austro, 66 NY2d at 674).
Neither of these categorical rules resolves the case at hand. We have an indemnity agreement alleged to shift potential liability between the contracting parties arising from a third-party negligence claim. In these types of cases, the courts resolve the contract and tort canon conflict by subjecting such indemnity provisions to exacting review to ensure that the parties specifically intended to reallocate the burden of liability regarding negligence claims by third parties (see Levine v Shell Oil Co., 28 NY2d 205, 211 [1971][Scileppi, J]. This approach was apotheosized in Gross v Sweet (49 NY2d 102, 106 [1979]), where the Court of Appeals admonished "that the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence, and though, with certain exceptions, they are enforceable, such agreements are subject to close judicial [*4]scrutiny."[FN3] Regarding exculpatory, as opposed to indemnity contracts, this judicial disfavor has manifested into something akin to a litmus "express words" test, where the contract must specifically state that one party is being absolved from future claims of negligence liability by the other, or do so in language so clear, unequivocal, and unmistakable as to admit of no other meaning (see Uribe v Merchants Bank of New York, 91 NY2d 336, 341 [1998][Bellacosa, J.]); Alexander v Kendal Central School District, 221 AD2d 898 [4th Dept 1995]). In contrast, regarding indemnity agreements, where the issue is not whether the injured party has forfeited a right to recover damages, but who must pay the damages, there is no longer a categorical "express words" test (see e.g. Grumman American Aviation Corp. v International Business Corp, 77 AD2d 582, 584 [2nd Dept 1980][ "The indemnity clause, although not specifically mentioning negligence, is sufficiently broad to encompass the imposition of liability resulting from operational negligence."]; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation §77).
In Niagara Frontier Transportation v Tri-Delta Construction Corp (107 AD2d 450 [4th Dept]) affd 65 NY2d 1038 [1985], Justice Denman neatly synthesized the law that relaxed in certain cases the strict rule requiring that an indemnity clause expressly state that a party is to be indemnified against his own negligence before the clause will be given that effect:

"Where [an] indemnification agreement has been negotiated at arm's length between sophisticated business entities, the intent being to allocate the risk of liability to third parties between themselves, essentially through the employment of insurance, the rule has been somewhat liberalized. In such circumstances it is not necessary that the exculpatory language refer expressly to the negligence of the indemnitee, so long as the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances" (Id. at 454) (internal citations and quotation marks omitted).The indemnity agreement in the present case does not expressly mention claims based upon Champagne's own negligence as encompassed within Pierce's obligation to indemnify. Nevertheless, can such indemnity obligation be inferred here under the less stringent "clear implication" test contemplated by Niagara, and can that question be resolved by summary judgment motion? Based upon the record before the Court, it has no difficulty in concluding that the "clear implication" test applies here, as it does "in the context of indemnification clauses that [act] more like insurance contracts spreading risk between sophisticated parties than amorphous indemnification provisions" (Williams v J.P. Morgan & Co, Inc., 248 F.Supp. 320 [SDNY 2003]). If the indemnification clause used here clearly implies that Champagne is to be indemnified for liability caused by its own negligence, "it is unnecessary for the clause to refer expressly to the negligence of the party being indemnified" (Reeves v Welch, 127 AD2d 1000, 1001 [4th Dept 1987]. Champagne and Pierce are both experienced commercial operators in their respective fields. There has been no suggestion that the contractual arrangement between them "was other than an arms length transaction between business parties of equivalent bargaining power, nor any suggestion of overreaching" (Starobin v Randolph Computer Corp, 689 F.Supp 323, 328 [SDNY 1988]. This case is markedly different from [*5]those arising in the typical consumer context, such as vehicle leasing (see Sweeney v Hertz Rental Corp., 292 AD2d 289 [1st Dept 2002] [indemnification clause did not require vehicle lessee to indemnify lessor for third-party injuries alleged caused by lessor's negligent maintenance of vehicle]; Eggeling v Ryder Truck Rental, Inc., 254 AD2d 789 [4th Dept 1998][same]).
The "clear implication" test requires a court to examine not only the words of the indemnification clause, but "the language and purpose of the entire agreement and the surrounding facts and circumstances" (Hooper Associates, Ltd. v AGS Computers, Inc., 74 NY2d 487, 491-92 [1989][Simons, J.]. Certainly, there are situations where these issues raise questions of fact that cannot be resolved as a matter of law by summary judgment (see Brinson v Kulback's & Assoc., Inc., 296 AD2d 850, 852 [4th Dept 2002]). However, Pierce does not defend the motion for summary judgment on this ground. So too, the record before the court does not contain any disputed factual claims upon which trial would be warranted. Were there any other factual claims either party thought relevant to disposition of this summary judgment motion, it was incumbent upon that party to bring them forward (CPLR 3212[b]). There being none, disposition of this summary judgment motion on the merits is appropriate.
Turning to the merits of the dispute over the scope of the indemnification clause employed by the parties in this case, we start with the language they used. Where, as here, the "clear implication" standard applies, courts may rely upon the "strength of a broadly worded [indemnification] clause" even if "framed in less than precise language" to glean the intent of the parties (Gross v Sweet, 49 NY2d 102, 108 [1979]). The indemnification clause used here is about as broad as one can make it, encompassing "all ... liabilities and claims for injuries to persons ... arising out of or in connection with the transportation of the property or cargo of Champagne." The clause is not drafted to admit an interpretation limiting its scope only to liabilities arising from Pierce's negligent performance under the contract (see Ebbecke v Bay View Environmental Services, 145 AD2d 524, 526 [2nd Dept 1988]. So too, the indemnification clause is not coupled with additional language that limits its otherwise broad scope (see L.B. Smith, Inc. v Bradley & Williams, Inc., 88 AD2d 782, 782-83 [4th Dept 1982]).
Second, the contract specifically imposed upon Pierce the responsibility to secure insurance naming Champagne as an additional insured, protecting Champagne "from any action" for which Champagne could be liable regarding the contract activities undertaken by Pierce. The employment of insurance in conjunction with an indemnification agreement strongly implies that the parties intended the "perfectly common and acceptable business practice by which an entrepreneur may provide protection against its own fault" by indemnification and insurance clauses (see Hogeland v Sibley, Linday & Curr Co., 42 NY2d 153, 160 [1977]. Further, the fact that Champagne was to be named an additional insured is strong indication that it was to be covered and indemnified for its own negligence (Freund v Utah Power & Light Company, 793 P.2d 362, 373 [Utah 1990]).
Last, a court must look at the surrounding facts and circumstances. "[B]ecause a common law right to indemnification is available, even in the absence of a contractual provision, where the negligence of the party seeking indemnification is deemed to be 'passive,' courts should be wary of construing [indemnification agreements] in such a manner that they become absolutely meaningless" (Kurek v Port Chester Housing Authority, 18 NY2d 450, 456 [1966][Keating, J.]. To exclude claims against Champagne based upon its negligent maintenance and repair of its trailers used by Pierce employees under the contract "from the scope of the indemnity clause would effectively nullify the [*6]entire clause" (Grumman American Aviation Corp.v International Business Machines Corp., 77 AD2d 582, 584 [2nd Dept 1980]. Construing the language of the indemnity clause used by the parties in this case to embrace third- party claims based upon alleged negligence of Champagne "affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect" (Hooper Associates, Ltd. v AGS Computers, Inc., 74 NY2d 487, 493 [1989]).
According, the motion of Champagne for summary judgment is granted, directing Pierce to defend and indemnify Champagne regarding the claim asserted in plaintiff's complaint.
Dated:February 19, 2004
Lyons, New York

John B. Nesbitt
Acting Justice of the Supreme Court
Decision Date: February 19, 2004
Footnotes

Footnote 1:1 Section 1 of the contract required Pierce to provide "motor vehicle equipment for use in the services to be performed hereunder, which such equipment is in good efficient condition, as to both operation, safety and appearance." This covered the tractors supplied by Pierce. There is nothing in the contract requiring Pierce to assure the proper condition of the equipment supplied by Champagne - the trailers.

Footnote 2:2 In addition, an exculpatory contract exempting a party from liability for ordinary negligence may be unenforceable "if it is found to violate public policy either by way of conflicting with an overriding public interest or because it constitutes an abuse of a special relationship between the parties" (Ash v New York University Dental Center, 164 AD2d 366, 369 [1st Dept 1990]).

Footnote 3:3 Although Gross involved an exculpatory as opposed to indemnity agreement, this language has been repeatedly quoted and relied upon in those case examining contract indemnity issues (see e.g. Tibbetts v I.B.M. Corp., 161 AD2d 581, 582-83 [2nd Dept 1990].