Fuchsberg, J.
The main issue on this appeal is whether the defendant-appellant The Berenson Corporation is entitled to recover on its cross claim for contractual indemnity against its lessee, the codefendant Sibley, Lindsay & Curr Co., pursuant to certain clauses of the lease between these parties. Since they were landlord and tenant, a subsidiary issue involves in the effect, if any, of section 5-321[1] of the General Obligations Law on the enforceability of the lease’s indemnity provisions.
Berenson owns the Irondequoit Shopping Center; Sibley, which operates a large department store in the center, is the major tenant. The underlying actions, in which both Berenson *156 and Sibley were named as defendants, arose out of personal injuries sustained by the plaintiff Martha Hogeland, a customer of Sibley, when, in the course of leaving the store, she fell over a low-lying concrete planter box whose presence was obscured by unremoved snow and slush. The box was located about 20 feet from a Sibley entrance on a canopied sidewalk which ran along one side of the Sibley store.
While the sidewalk was not part of the leased premises, it and the planter box had been constructed by Berenson’s contractors pursuant to plans and specifications drawn by Sibley’s architects. There was also evidence at trial that, under their mutual arrangements for snow removal, employees of each defendant were separately charged with that task during certain intervals of the time period during which it had accumulated on this occasion and that both would see to the care of the shrubs and plants grown in the box in question.
The jury having found both defendants negligent and jointly liable to Mrs. Hogeland and her husband, it thereafter, in accordance with the practice emanating from Dole v Dow Chem. Co. (30 NY2d 143), proceeded to allocate proportionate responsibility as between the two defendants at 60% for Berenson and 40% for Sibley. Berenson’s contractual cross claim having been submitted by stipulation of the defendants for determination by the court alone,[2] the trial court then granted judgment over for indemnification in favor of Berenson against Sibley for $16,440.80, the sum which it was agreed represented 60% of the Hogeland judgment plus the expenses incurred by Berenson in its defense of the negligence action.[3] However, on Sibley’s appeal from that determination, the Appellate Division reversed and dismissed the cross claim (51 AD2d 886). The present appeal to us by Berenson followed.
The lease, insofar as pertinent here, provided:
"article ix.
"Indemnity and Public Liability Insurance
"Section 1. The Tenant agrees to indemnify and save harmless the Landlord from and against all claims of whatever *157 nature arising from any act, omission or negligence of the Tenant, or Tenant’s contractors, licensees, agents, servants or employees, or rising from any accident * * * whatsoever caused to any person * * * in or about the Tenant’s demised premises, or * * * occurring outside of the demised premises but within the Shopping Center development * * * where such accident * * * results * * * from an act or omission on the part of Tenant * * * This * * * agreement shall include indemnity against all costs, expenses and liabilities incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof.
"Section 2. The Tenant agrees upon written request of the Landlord * * * to maintain * * * a policy of public liability and property damage insurance under which the Landlord * * * and the Tenants are named as insureds, and under which the insurer agrees to indemnify and hold the Landlord * * * harmless from and against all cost, expense and/or liability arising out of or based upon any and all claims, accidents, injuries and damages mentioned in Section 1 of this article ix * * * The minimum limits of liability of such insurance shall be one hundred thousand dollars ($100,000) for injury (or death) to any one person * * * [T]he Landlord will reimburse the Tenant for any extra premium paid by the Tenant on account thereof. In any event the Tenant will without cost to the Landlord maintain during the term hereof such a policy in effect wherein it will be named as the insured * * *
"Section 5. Anything in this article to the contrary notwithstanding, nothing in this lease shall be construed to relieve the Landlord from responsibility to the Tenant for any loss or damage caused the Tenant wholly or in part by the negligent acts or omissions of the Landlord; except, however, that the Landlord shall not be responsible for such portion of such loss or damage which is recovered or recoverable by the Tenant from insurance covering such loss or damage or for such portion of such loss or damage against which the Tenant is indemnified or insured”.
Analysis of section 1 of the foregoing provisions readily discloses that it contemplates three sets of circumstances: (a) claims against Berenson arising from the negligence of Sibley, its contractors or licensees, (b) claims against Berenson arising from any accident occurring "in or about” the Sibley premises *158 and (c) claims arising out of negligence of Sibley anywhere in the shopping center.
To sustain the Appellate Division’s dismissal, Sibley, while agreeing that the second eventuality, (b), could be interpreted as intended to indemnify Berenson against its own negligence, here contends that the clause nevertheless does not apply because the Hogeland accident did not occur "in or about” its premises. Insofar as the other two eventualities, (a) and (c), are concerned, it argues that they are not to be deemed to include indemnification for injuries caused, as they were here, in part by reason of Berenson’s own negligence. Further, it takes the position, as had the Appellate Division, that indemnity is also to be denied to Berenson because of section 5 of article IX’s language that the landlord was not to be relieved from "responsibility to the Tenant for any loss or damage caused the Tenant wholly or in part by the negligent acts or omissions of the Landlord.”
Berenson, on the other hand, urges that the provisions in question manifest an unmistakable intent to indemnify under all three parts of section 1 of article IX, irrespective of Berenson’s own negligence, that Sibley’s exemption from liability to Berenson under section 5 was not applicable to claims arising out of injuries to third parties such as Mr. and Mrs. Hogeland and that section 5-321 of the General Obligations Law does not bar indemnity in this case.
We hold that Berenson was entitled to indemnification. Our reasons follow:
At the very outset, we remark on the fact that the lengthy lease before us obviously was one negotiated at arm’s length between the representatives of two sophisticated business entities, one a large department store company and the other the real estate corporation which organized, owned, constructed and managed the shopping center. The tenant had tailored the contruction to its special needs. And the mutual nature of the arrangements for the maintainance of appurtenances such as those involved in this very case is tell-tale evidence that the lease was not one whose making dominated by either party.
A lease or other contract entered into under such circumstances by parties so situated is no longer to be construed as not intending indemnification of a party for its own negligence unless that intention is set forth in specific and "unequivocal terms” (see Thompson-Starrett Co. v Otis Elevator Co., 271 *159 NY 36, 41). Instead, in such cases we now look to the "unmistakable intent of the parties” rather than the semantic stereotypes with which an agreement may be phrased (Levine v Shell Oil Co., 28 NY2d 205, 212). It suffices that the agreement between the parties connotes an "intention to indemnify [which] can be clearly implied from the language and purposes of the entire agreement”. (Margolin v New York Life Ins. Co., 32 NY2d 149, 153.)
Applying that standard to the present case, and turning initially to the first and third parts of section 1 of the indemnification clauses, we note that, though those two subsections speak only of Sibley’s negligence, neither expressly exempts Sibley from its obligation to indemnify in the event that its negligence is shared with that of Berenson. However, it is unnecessary here for us to decide whether an obligation to indemnify Berenson can be implied from that language. For, even assuming, arguendo, that it does not, the second part of section 1 in any event clearly supports Berenson’s right to indemnification.
It is significant that that part makes no reference to negligence of Sibley or of Berenson. Its broad inclusion of "any accident * * * whatsoever * * * to any person” is qualified only by the words "in or about the Tenant’s demised premises”. It is not to be read as limited in its spatial description to "in the demised premises” for then "or about” would have no meaning.
Moreover, the phrase "in or about” is one of art. Defined as "a phrase having reference to an area and expressing the idea of physical proximity” (Ballantine’s Law Dictionary, [3d ed], p 631), it frequently is used synonymously to mean "around” or "on the outside of’ (Thompson v Banks, 43 NH 540, 541). It signifies locality (cf. Wise v Central Dairy Co., 121 Kan 258, 259, where a workman injured 200 feet from the factory was unjured "in, on or about the factory”). Consequently, in the context of the facts of this case, it must be held to include the sidewalk area where the accident happened. Mrs. Hogeland was then actually in the process of departing the Sibley premises. She was still on the sidewalk which served it alone and was still under the canopy it had erected either to attract or shelter its customers. Indeed, the undisputed evidence was that at times Sibley would actually close off a portion of the sidewalk and use it as an additional sales area. As the jury apparently found, it joined in its maintenance.
*160 It is evident too that section 5 of article IX does not vitiate Berenson’s right to indemnification. That section, an exculpatory rather than indemnitory clause, relates only to loss or damage Berenson might occasion directly to Sibley and then only to the extent that Sibley has not otherwise been paid for its loss by insurance or other forms of indemnity. By no means does it affect any right to indemnity from Sibley to which Berenson may be entitled under section 1 in order to recoup for payments made to compensate for losses of third parties.
Further support for this interpretation is to be found in the provisions for insurance found in section 2 of article IX of the lease. In limits far exceeding the judgment at stake here, the insurance described is to protect not only against liability claims against both defendants but expressly provides for any indemnity claims which Berenson might bring against Sibley under section 1. In the realities of today’s world of business, section 2’s concern with the avoidance of duplicate insurance and the absorption of any additional premium therefor by the landlord almost indisputably proclaims a mutuality of intent to insure rather than to negate its payment if the occasion for indemnification under section 1 should arise. Public policy is certainly not undermined by a frank recognition of such a perfectly common and acceptable business practice by which an entrepreneur may provide protection against its own fault.
Nor does section 5-321 of the General Obligations Law interdict Berenson’s right to recover. Enacted originally in 1937 to overcome the decision in Kirshenbaum v General Outdoor Adv. Co. (258 NY 489), section 5-321 was, at least in part, a response to "the widespread use in New York City of such contracts, resulting in unequal bargaining power between lessor and lessee” (1949 Report of NY Law Rev Comm, p 815; see Billie Knitwear v New York Life Ins. Co., 262 App Div 714, 715 [dissenting opn], affd 288 NY 682). The legislative history and the statute’s express invalidation of any agreement "exempting the lessor from liability for damages for injuries * * * resulting from the negligence of the lessor” (emphasis added) strongly suggests that is was directed primarily to exculpatory clauses in leases whereby lessors are excused from direct liability for otherwise valid claims which might be brought against them by others. It and several parallel provisions (see General Obligations Law, §§ 5-322, 5- *161 322.1, 5-323, 5-325) prohibit agreements which free landlords' (or others in comparable relationships) from all responsibility to a tenant (or others) for negligence; the former are thus compelled at their own peril to retain the incentive to act prudently. ,
It is against this background of declared purpose that the indemnification clauses before us must be considered. So analyzed, Berenson is not exempting itself from liability to the victim for its own negligence. Rather, the parties are allocating the risk of liability to third parties between themselves, essentially through the employment of insurance. Courts do not, as a general matter, look unfavorably on agreements which, by requiring parties to carry insurance, afford protection to the public (cf. St. Vincent’s Med. Center of Richmond v Vincent E. Iorio, Inc., 78 Misc 2d 968; but see Board of Educ. v Delle Cese, 65 Misc 2d 473). Thus, in Brentano’s v Charter Mgt. Corp. (46 AD2d 861), an indemnification provision was held not to violate section 5-321 of the General Obligations Law since it required that the landlord and the tenant carry their own insurance.
Significantly, it was thought noteworthy in Levine v Shell Oil Co. (28 NY2d 205, 213, supra), that there was no evidence there of "fraud or overreaching conduct”, that it was an "arm’s length transaction” and that "there has been no showing that the agreement involved * * * either a contract of adhesion or an unconscionable agreement”. This is not to say that adhesion principles may not be applicable to an agreement entered into in a commercial lease, but rather that they do not apply here where the landlord contracted for no direct exculpation from negligence towards his indemnitor, where insurance was provided as a form of continued responsibility and where the paties were so equal in their relative bargaining positions (see Love, Landlord’s Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability, 1975 Wis L Rev 19, 85).
Accordingly, the order of the Appellate Division should be reversed and the order and judgment of Supreme Court, Monroe County, reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, with costs, and the order and the judgment of Supreme Court, Monroe County, reinstated.

. "Every convenant, agreement .or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.”

. Berenson’s cross claim for common-law indemnity was dismissed by the court once the jury found both parties in pari passu as to the nature of each one’s negligence (Tipaldi v Riverside Mem. Chapel, 273 App Div 414, 418, affd 298 NY 686).

. The Hogelands’ judgment was satisfied and therefore was not the subject of any of the appeals in this action as such.