Jones, J.
(dissenting). I have no quarrel with the position of the majority that the release executed by plaintiff on November 1, 1975 should not be given effect to bar recovery in the event he establishes that the injuries he suffered were caused by gross negligence on the part of either or both defendants. I do dissent, however, from the majority’s conclusion that the instrument is insufficient as a matter of law to relieve defendants from liability for fault short of gross misconduct on their part; this conclusion emasculates the instrument and is inconsistent with current law interpreting agreements exonerating a party from liability for his own negligence.
Despite the unlimited language of the release given by plaintiff, by which he explicitly waived "any and all claims [against the present defendants] for any personal injuries or property damage that I may sustain or which may arise out of my learning, practicing or actually jumping from an aircraft”, the majority concludes that the agreement does not exonerate defendants from liability for ordinary negligence on their part. This is said to follow because, although disclaiming a requirement that the particular word "negligence” be included in the release, the majority concludes (p 108) that *111 the instrument does not contain "words conveying a similar import” which it states must be employed by the parties.
This result would have been congenial to the prior view of exoneration agreements under which, because the law looked with disfavor on attempts of a party to avoid liability for his own fault, there was insistence that from the agreement "it must be absolutely clear that such was the understanding of the parties” (Van Dyke Prods. v Eastman Kodak Co., 12 NY2d 301, 304). It fails, however, to take into account the change which was wrought by our discard of Thompson-Starrett Co. v Otis Elevator Co. (271 NY 36), which had been the fountainhead of the requirement that a contract to indemnify a person against his own negligence must express such intention in "unequivocal terms” (271 NY, p 41). It is significant for present purposes that, prior to its abandonment, the Thompson-Starrett rule was applied with equal vigor to both indemnification agreements and to releases.*
The disposition of the present appeal by the majority is wholly consistent with Thompson-Starrett and its progeny; indeed its holding is predicated on Thompson-Starrett analysis (p 107). This court, however, has long since repudiated the principle of Thompson-Starrett. In Kurek v Port Chester Housing Auth. (18 NY2d 450) and in Liff v Consolidated Edison Co. of N. Y. (23 NY2d 854, affg 29 AD2d 665) we "made substantial inroads on the Thompson-Starrett rationale” (Levine v Shell Oil Co., 28 NY2d 205, 212), finding sufficiently unequivocal to create a right of indemnification against the indemnitee’s own negligence, agreements that would not have passed muster under our prior decisions. In Levine we expressly announced that the Thompson-Starrett rationale "is no longer a viable statement of the law”, cautioning that courts should be wary of construing such provisions "in such a *112 manner that they become absolutely meaningless” (28 NY2d, p 212). Indeed, as we only recently said in Hogeland v Sibley, Lindsay & Curr Co. (42 NY2d 153, 158-159): "A lease or other contract * * * is no longer to be construed as not intending indemnification of a party for its own negligence unless that intention is set forth in specific and 'unequivocal terms’ (see Thompson-Starrett Co. v Otis Elevator Co., 271 NY 36, 41). Instead, in such cases we now look to the 'unmistakable intent of the parties’ rather than the semantic stereotypes with which an agreement may be phrased (Levine v Shell Oil Co., 28 NY2d 205, 212). It suffices that the agreement between the parties connotes an 'intention to indemnify [which] can be clearly implied from the language and purposes of the entire agreement.’ (Margolin v New York Life Ins. Co., 32 NY2d 149, 153.)” In light of these decisions, I cannot agree with the majority’s continued application of the Thompson-Starrett rule of strict judicial construction. Nor can I perceive any basis for their suggestion that Kurek and the cases that have followed it have only carved out an exception, into which they find the present release does not fall. Rather I accept at face value the unqualified language of the Levine decision that Thompson-Starrett "is no longer a viable statement of the law”. (28 NY2d, p 212.)
There is no reason to believe that the development of the law with respect to interpretation of agreements by which a party is relieved of liability for his own negligence is not equally applicable to agreements which take the form of release as well as to those providing indemnification. The principles involved — that contracts should not be so construed as to make them meaningless and that the intent of the parties is to be drawn from the entire instrument, not from the presence or absence of a particular talismanic word or term — are equally appropriate and, when applied to the case before us, lead inescapably to the conclusion that the instrument executed by this plaintiff prior to his undertaking instruction at the hands of defendants served to exonerate the latter from the ordinary negligence claims plaintiff presently asserts.
The activity on which plaintiff was. about to embark under the tutelage of defendants was a hazardous one at best, but virtually the only claims that he might have had against them should he sustain personal injuries or property damage would be claims resulting from fault or negligence of defendants. *113 The majority reads the agreement "merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant, to those who participate in such a physically demanding sport”, (p 110.) But of what significance or practical effect is such a release? It is difficult to conceive of any claim other than one predicated on negligence; personal injuries or property damage occasioned without negligence by one or both of the defendants would give rise to no cause of action at all. The release then, if construed as not including claims predicated on negligence, releases nothing and is meaningless and a nullity. A more broadly worded exoneration provision would be difficult to imagine; a requirement that there be included the word "negligence” or a description of the specific acts of misconduct pleaded in the complaint (as plaintiff would contend for) would be a reversion to the "semantic stereotypes”, which we have now abjured (Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 159, supra). There is therefore no basis for limiting the effect of the release executed by this plaintiff; claims such as the present ones based on ordinary negligence appear to me to be precisely the claims intended by the parties to be included in the language "any and all claims * * * for any personal injuries or property damage that I may sustain or which may arise out of my learning, practicing or actually jumping from an aircraft”.
As the majority observes, the relationship between these parties is not such as to give rise to a public interest precluding enforcement of the release executed by plaintiff. Except as to the cause of action predicated on the alleged claim of gross negligence, I would therefore reverse the order of the Appellate Division, reinstate the affirmative defense of release pleaded by defendants, and grant summary judgment in favor of defendants dismissing the causes of action alleged in the complaint.
Chief Judge Cooke and Judges Gabrielli and Wachtler concur with Judge Fuchsberg; Judge Jones dissents and votes to reverse in a separate opinion in which Judges Jasen and Meyer concur.
Order affirmed, with costs. Question certified answered in the affirmative.

 Thus in Kaufman v American Youth Hostels (5 NY2d 1016) this court dismissed defendant’s affirmative defense of release, citing Thompson-Starrett, Walters v Rao Elec. Equip. Co. (289 NY 57), which had rejected a claim for indemnification, and Boll v Sharp & Dohme (307 NY 646), in which a defense of release had also been dismissed. (But see the dissenting opn of Beeitel, J., in Boll, 281 App Div 568, 572.) In Van Dyke Prods, v Eastman Kodak Co. (12 NY2d 301, supra), in which we found a written notice not sufficiently unequivocal to relieve the defendant of its own negligence, our determination was predicated on Thompson-Starrett Co. which was discussed and quoted. Again, in Ciofalo v Vic Tanney Gyms (10 NY2d 294), where we held a release sufficient to exonerate the defendant from its own negligence, we cited the Thompson-Starrett case as authority for the need for "express language to that effect” (10 NY2d, p 297).