**K/D WEATHERBEATERS, INC., a North Dakota Corporation,**

v.

**GULL LAKE INDUSTRIES, INC., a foreign corporation, Appellee,**

**C.P. Chemical Company, Inc., a foreign corporation, Appellant.**

**No. 82–1681.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 31, 1983.

Decided Feb. 7, 1983.

Dean A. Hoistad, Moorhead, Minn., for appellee Gull Lake Industries, Inc.

Patrick R. Morley, O'Grady, Morley & Morley, Ltd., Grand Forks, N.D., for appellant C.P. Chemical Co., Inc.

Before ROSS and McMILLIAN, Circuit Judges, and DAVIES,* Senior District Judge.

PER CURIAM.

This is an appeal from the district court's[1] order denying C.P. Chemical's motion for summary judgment and granting summary judgment for Gull Lake. We affirm.

This appeal arises from a damage suit brought by plaintiff K/D Weatherbeaters, Inc., against defendants Gull Lake Industries, Inc. and C.P. Chemical Company, Inc. The plaintiff's claim centered on allegedly defective foam insulation material. All parties to this action have settled with respect to the claims of K/D Weatherbeaters.[2] Accordingly, the trial court made no determination regarding the specific merits of the claims or the respective faults of the two defendants. The only issue remaining is the cross-claim for indemnity by C.P. Chemical against Gull Lake: Does the contract between C.P. Chemical and Gull Lake, taken as a whole, indicate an unmistakable intention that Gull Lake would indemnify C.P. Chemical for the claims of K/D Weatherbeaters in this lawsuit?

The product involved in this case was C.P. Chemical's Tripolymer Foam Insulation (Tripolymer). Tripolymer is composed of three primary ingredients: resin, a catalyst and air. From 1976 through the autumn of 1978, Gull Lake acted as a distributor of Tripolymer. C.P. Chemical manufactured the resin component of Tripolymer at its plant in White Plains, New York, and shipped it to Gull Lake's facility in Tenstrike, Minnesota. The Catalyst component is a mixture of water, acid and detergent. Water is the main ingredient. C.P. Chemical provided the chemicals necessary for the catalyst (except water), along with the formula and instructions for mixing the catalyst and making foam.

C.P. Chemical and Gull Lake executed a contract to fulfill their business agreement on February 1, 1976.[3] Gull Lake's primary

---

* The Honorable Ronald N. Davies, United States Senior District Judge, sitting by designation.

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

2. Both the parties contributed to the settlement of the plaintiff's claim. The issue of fault was never determined by the trial court and we do not consider that issue here.

3. Pursuant to the terms of the contract at paragraph XXVI and the rationale of the district court's order of December 19, 1979, the contract was interpreted according to New York law.

responsibility was to sign up dealers and expand the marketing of Tripolymer insulation. The contract contained the indemnity clause at issue in this case.

After K/D Weatherbeaters commenced the suit against C.P. Chemical and Gull Lake, C.P. Chemical tendered the defense of this action, pursuant to the indemnity clause, to Gull Lake. Gull Lake refused to accept the defense. C.P. Chemical brought a motion for summary judgment, asserting that it was entitled to indemnity as a matter of law. Gull Lake moved for a summary judgment that, as a matter of law, it was under no duty to indemnify C.P. Chemical.

The contract contained the following clauses:

(XI) Indemnification—Insurance—C. P.'s Distributor hereby waives any counterclaims, cross-claims and rights of subrogation and will indemnify and hold harmless C.P. from all fines, suits, claims, proceedings, demands or actions of any kind and nature, including consequential damages, from anyone whomsoever, arising out of or otherwise connected with the operation of C.P.'s Distributor's business. C.P.'s Distributor will reimburse C.P. for such reasonable counsel fees as may result from any of the foregoing.

(XVII) Claims—If C.P.'s Distributor shall discover any C.P. products or equipment not fully, timely or properly delivered, or delivered in a damaged condition, or that C.P. is in any way not fully performing or has defectively performed or not fully performed any obligations under the terms of this agreement or any dealer's leasing agreement, or is not properly performing or has any claim or believes it may have a claim against C.P. or has knowledge that a dealer has a claim or may have a claim, it shall be required to telephone C.P. Chemical during business hours within 48 hours after acquiring knowledge of such failure or such occurrence, advising C.P. of all details of the occurrence and/or failure. C.P.'s Distributor shall immediately after the aforesaid telephone call, set forth the above details by telegram or letter addressed to C.P. at its address by registered mail, return receipt requested.

Letters are to be mailed within two days after the aforesaid phone call.

In the event C.P.'s Distributor shall fail to fully and completely perform under the terms of this paragraph, it hereby waives any claim or claims it may have against C.P. Chemical for any of the foregoing; it being the intention of the parties hereto that this paragraph shall be strictly construed.

*C.P. shall be obliged to investigate any failure or occurrence as may be timely or properly set forth by C.P.'s Distributor.* When the occurrence concerns a dealer or customer of C.P.'s Distributor, C.P. may direct that such investigation be conducted by C.P.'s Distributor. *In the event such failure or occurrence shall have been caused by C.P. or its agents, servants or employees, then and in that event, C.P. shall fully and fairly reimburse the representative dealer and/or C.P.'s Distributor.* In the event such failure or occurrence shall have been caused by C.P.'s Distributor or its agents, servants or employees, C.P.'s Distributor shall reimburse C.P. and/or the dealer fully and fairly for such expense it may have had concerning such claim. (Emphasis added).

 Because it is unnatural that one would agree to indemnify another when otherwise under no such legal obligation, indemnity clauses are strictly construed. *Levine v. Shell Oil Co.,* 28 N.Y.2d 205, 212, 321 N.Y.S.2d 81, 85, 269 N.E.2d 799, 801 (1971). In construing such clauses, the court must determine whether "the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances." *Margolin v. New York Life Insurance Co.,* 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 339, 297 N.E.2d 80, 82 (1973). Further, the court must consider whether the agreement reflects an unmistakable intent to indemnify. *Hogeland v. Sibley, Lindsay & Curr Co.,* 42 N.Y.2d 153, 159, 397 N.Y.S.2d 602, 606, 366 N.E.2d 263, 266 (1977).

Reviewing the contract in light of these standards, the district court found that paragraph XVII of the contract is facially inconsistent with paragraph XI, the indemnity clause. While the indemnity clause purports to hold C.P. Chemicals harmless from all "fines, suits, claims, proceedings, demands or actions of any kind * * * arising out of or otherwise connected with the operation of CP's Distributor's business [i.e., Gull Lake's distributorship]," paragraph XVII states that in the event a product or equipment failure is caused by C.P. Chemical or its agents, C.P. Chemical "shall fully and fairly reimburse" Gull Lake or the representative dealer.

In *Hogeland* the court found an unmistakable intent to indemnify from two clauses that seemed inconsistent at first glance. Appellant strongly urges that the provisions of the *Hogeland* contract and the contract in this case are similar in that both indicate that under certain circumstances the indemnitor will be responsible for damages and not be able to shift the burden to the indemnitee through the contractual provisions.

The contract in *Hogeland* contained both an indemnity clause and an exculpatory clause, relating to loss or damage that the lessor might cause the lessee, and then only to the extent that the lessee was not compensated by insurance. "By no means [did] it affect any right to indemnity from [lessee] to which [lessor] may be entitled under section 1 in order to recoup for payments made to compensate for third parties." *Id.* at 160, 397 N.Y.S.2d at 606, 366 N.E.2d at 266.

In contrast, the clause in question in the instant case specifically indicates intent to reimburse Gull Lake and third parties. This inconsistency precludes a finding that Gull Lake is required to indemnify C.P. Chemical. An unmistakable intention to indemnify cannot be clearly implied from the language and purposes of the entire agreement. Accordingly, we cannot say that the trial court erred in granting summary judgment for Gull Lake.