**Warren Earl MEEK and Lockie Meek, Plaintiffs,**

v.

**OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION, AFL–CIO, LOCAL 8–209, et al., Defendants.**

No. 91–CV–687A(H).

United States District Court, W.D. New York.

June 24, 1994.

Kenneth N. Rashbaum, Sedgwick, Detert, Moran & Arnold, New York City, for American Protective Services, Inc.

Joseph Ritzert, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Occidental Chemical Corp.

ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B), on January 8, 1993. On May 20, 1994, Magistrate Judge Heckman filed a Report and Recommenda-

tion recommending that defendants American Protective Services, Inc. and Thomas R. Moss's motion for summary judgment on their claims for defense and indemnification against defendant Occidental Chemical Corp. be denied; and that defendant Occidental Chemical Corp.'s cross-motion to dismiss the defense and indemnification claims be granted.

The Court having carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants American Protective Services, Inc. and Thomas R. Moss's motion for summary judgment on their claims for defense and indemnification against defendant Occidental Chemical Corp. are denied; and defendant Occidental Chemical Corp.'s cross-motion to dismiss the defense and indemnification claims is granted.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. Richard J. Arcara for all pretrial and dispositive matters. Defendants American Protective Services, Inc. ("APS") and Thomas R. Moss have moved for summary judgment on their claims for defense and indemnification against defendant Occidental Chemical Corp. ("Occidental"). Occidental has cross-moved to dismiss the defense and indemnification claims. For the following reasons, the summary judgment motion by APS and Moss should be denied, and Occidental's cross-motion to dismiss should be granted.

### BACKGROUND

This is a diversity personal injury action in which plaintiff Warren Earl Meek alleges that, on August 2, 1991, he was struck in the head by a rock while driving his truck through a picket line at Occidental's "Durez" facility in Niagara Falls, New York ("Durez–Niagara"). APS provided security services at the Durez–Niagara plant, and defendant Thomas R. Moss was employed by APS as a security guard at the Durez–Niagara plant, at the time of the alleged incident.

Plaintiff (and his wife Lockie Meek) filed this action on October 18, 1991 against several defendants, including APS and Moss. Specifically with regard to the instant motion, the amended complaint (filed on October 13, 1992) alleges that APS and Moss negligently allowed Meek to proceed in his truck through the Durez–Niagara picket line without a police escort, which proximately caused or contributed to plaintiff's injuries (Item 52, ¶¶ 85–90). It also alleges that Occidental was negligent in that it failed to take all precautions necessary to ensure plaintiff's safety (*id.*, ¶¶ 91–95).

By letter dated November 14, 1991, counsel for APS made a formal demand that Occidental assume defense and indemnification obligations for this lawsuit, as set forth in a contract for services between APS and Occidental (Item 290, Ex. C). Subsequently, on November 25, 1991, APS and Moss brought a third-party action against Occidental seeking, among other things, contractual defense and indemnification, and attached a copy of a contract dated March 1, 1991, as an exhibit to the third-party complaint (*id.*, Exs. E, E(3)).

In its answer to the third-party complaint dated December 17, 1991, Occidental asserted the affirmative defense that the alleged contract relied upon by APS "was neither approved, accepted nor executed by Occidental" (*id.*, Ex. F, ¶ 13). By letter dated March 12, 1992, counsel for Occidental formally notified APS that Occidental "decline[d] to undertake the defense or indemnify" APS with regard to this lawsuit (*id.*, Ex. D).

APS and Moss now move for summary judgment on their claims for defense and indemnification. According to APS and Moss, under ¶ 6(a) of the March, 1991 contract for provision of security services at the Durez–Niagara plant, as well as under the corresponding provision of the September 1, 1988 "master" agreement between APS and

Occidental for security services at the Rainbow Center in Niagara Falls (*id.*, Ex. K), Occidental is obligated to pay all damages, expenses, costs and attorneys' fees incurred by APS as a result of this personal injury action.

Specifically, the indemnification clause at issue provides:

6. Contrary to any other provisions provided for herein, the following will apply when coverage is provided during labor disputes and/or strikes of [Occidental]:

(a) [Occidental] shall indemnify and hold harmless APS, its affiliates, agents and employees from and against any loss, damage, injury, liability, claim or lien (including the payment of all damages, expenses, costs and attorneys' fees) for damage to property or injury to persons caused by employees of [Occidental] or other third parties.

(*Id.*, Ex. E(3)).

Occidental cross-moves for summary judgment dismissing the defense and indemnification claims. Occidental contends that it never entered into a separate contract for security services at the Durez–Niagara plant, and that it cannot be bound by the terms of the Rainbow Center contract. According to Occidental, each plant has its own purchasing agent who is independently responsible for obtaining security services at that particular facility. When Occidental hired APS in February, 1991 to provide security at Durez–Niagara, purchasing manager Douglas Henderson issued a purchase order containing Occidental's standard indemnification provision requiring APS to agree to defend and indemnify Occidental in the event of personal injury arising out of the work performed by APS (*see* Item 297, Exs. B, M).[1] Occidental claims that APS never executed this purchase order, but instead submitted its own form contract (the March 1, 1991 con-

tract) to Occidental, which also was never executed. According to Occidental, the only written agreements ever signed pertaining to the provision of security by APS at Durez–Niagara were six separate purchase orders issued after the strike (*id.*, Exs. P–U). Thus, Occidental contends that if any contractual defense or indemnification obligations exist, they exist on behalf of APS in favor of Occidental under the purchase order provisions.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). In order to avoid summary judgment, however, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra*, 933 F.2d at 167.

### II. Contractual Indemnification.

Under New York law, and Second Circuit cases applying New York law in fed-

---

1. The purchase order indemnification clause provides:

[APS] shall indemnify and hold harmless [Occidental], its employees and agents against all claims, liabilities, loss damages and expenses, of every character whatsoever for bodily injury ... sustained by any person (including but not limited to employees of [Occidental], of [APS] or of a SUBCONTRACTOR of [APS] ), while in,

on or about the premises of [Occidental] or the site of the WORK, if such injury ... arose out of or was in any way connected with the WORK or with the performance of or failure to perform the WORK, unless such injury ... results from the sole negligence or willful misconduct of [Occidental].

Item 297, Ex. B.

eral diversity actions, "[w]hen a claim is made that a duty to indemnify is imposed by an agreement, that agreement must be strictly construed so as not to read into it any obligations the parties never intended to assume." *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990) (citing *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 211, 321 N.Y.S.2d 81, 85, 269 N.E.2d 799, 801 (1971)). Thus, in the absence of a duty to indemnify imposed by law, such as where a party seeks indemnification for damages resulting from its own negligence, the right to indemnification must be contractually derived. "That is not to say that the indemnity clause must contain express language referring to the negligence of the indemnitee, but merely that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances." *Margolin v. New York Life Insurance Company*, 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 339, 297 N.E.2d 80, 83 (1973); *see also Haynes v. Kleinewefers, supra; Kurek v. Port Chester Housing Auth.*, 18 N.Y.2d 450, 456, 276 N.Y.S.2d 612, 615, 223 N.E.2d 25, 27 (1966) (express language need not be used as long as the contract demonstrates an unmistakable intent to indemnify the negligent party).

■ Here, APS and Moss contend that Occidental agreed to pay for the defense of this lawsuit, and to indemnify them for any damages they might sustain as a result of the suit. These claims are broadly stated without reference to the nature of the allegations in the complaint. However, a plain reading of the complaint makes it clear that plaintiff sued APS and Moss for damages caused by Moss's negligent performance of his duties as security guard in allowing plaintiff to drive his truck through the picket line without a police escort.

In order to prevail on this summary judgment motion, therefore, APS and Moss must establish that it was the "unmistakable intent" of APS and Occidental, as evidenced by either an enforceable contract or equivalent conduct, to provide defense and indemnification for damages resulting from APS or Moss's negligence. *See, e.g., Haynes v. Kle-*

*inwefers and Lembo Corp.*, 1990 WL 255838 (E.D.N.Y.), *aff'd*, 921 F.2d 453 (2d Cir.1990).

Even assuming the enforceability of the March 1, 1991 contract, or assuming that the September 1, 1988 "Rainbow Center" contract covered security services by APS at Durez–Niagara, the contractual language relied upon by APS does not provide unmistakable and unequivocal evidence that Occidental intended to defend or indemnify APS for damages resulting from the negligent conduct of APS or its employees. Pursuant to the indemnification clause, when APS provided security for Occidental during a labor dispute, Occidental agreed to indemnify APS against damages for injury caused by Occidental employees or other third persons. There is no language from which an intent to indemnify APS against its own negligence can be implied. Moreover, the indemnification clauses in the purchase orders issued by Occidental and executed by APS provide for APS to indemnify Occidental for damages caused by injuries arising out of APS' performance of security services, unless the injury results from Occidental's negligence or misconduct (Item 297, Ex. B; note 2, *infra*).

The clear and unambiguous intent of these contractual provisions, as well as the surrounding facts and circumstances, is that both APS and Occidental would bear their own costs if they were sued for damages caused or contributed to by the negligent or willful conduct of their own employees, which is precisely what happened. Plaintiffs sued Occidental for damages resulting from the conduct of its striking employees, and they sued APS for proximately causing or contributing to those damages by allowing Mr. Meek to drive through the picket line unprotected. Nothing in the purpose or language of the contracts or purchase orders between APS and Occidental, or in the performance or course of dealing between the parties, demonstrates an "unmistakable intent" that Occidental agreed to defend and indemnify APS against a suit for damages based on APS's own allegedly negligent performance of security services.

APS cites *Margolin v. New York Life Insurance Company, supra*, and *Hogeland v. Sibley, Lindsay & Curr Co.*, 42 N.Y.2d 153,

397 N.Y.S.2d 602, 366 N.E.2d 263 (1977), as cases in which the New York Court of Appeals enforced similar indemnification clauses. *Margolin* was a personal injury action brought by a pedestrian who slipped and fell on a patch of ice located on a sidewalk which was part of an apartment complex owned by the defendant (New York Life). The pedestrian sued New York Life, as well as the maintenance company (Park & Estate) hired by New York Life to keep the apartment complex sidewalks clear of snow and ice. The maintenance contract contained an indemnification clause which provided:

> The contractor (Park & Estate) hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature to persons whether employees or otherwise, and to property, including adjoining property caused by or resulting from the execution of the work or occurring in connection therewith, and agrees to indemnify and save harmless the owner (New York Life), his agents, servants, and employees from and against any and all claims, liability, loss, expense, damage or injury to persons and to property caused or occasioned directly or indirectly by the contractor or its work, or resulting from the use by the contractor, its agents or employees, of any materials, tools, implements, appliances, scaffolding ways, works, or machinery or other property.

*Margolin v. New York Life, supra,* 32 N.Y.2d at 153, 344 N.Y.S.2d at 339, 297 N.E.2d at 83.

The Court of Appeals found Park & Estate liable on New York Life's cross-complaint for contractual indemnification. According to the Court, the "broad and all-inclusive language contained in the indemnity agreement," along with the fact that Park & Estate failed to fulfill its contractual duty to remove the snow and ice from the sidewalk, provided a basis for concluding that the parties had clearly expressed their unequivocal intent to have Park & Estate assume the entire risk of any liability, whether or not New York Life was negligent. *Id.,* 32 N.Y.2d at 153–54, 344 N.Y.S.2d at 339–40, 297 N.E.2d at 83–84.

In this case, the indemnification clause relied on by APS does not contain the same type of "broad and all-inclusive language" that the indemnity provision at issue in the *Margolin* case contained. The APS contract provided for indemnification by Occidental "from and against any loss ... for injury to persons caused by employees of [Occidental] or other third parties." It did not provide for Occidental to "assume[ ] entire responsibility and liability for any and all damage or injury of any kind or nature ...," as did the indemnity clause in *Margolin.*

Moreover, the facts and circumstances alleged pertaining to the actual injury of plaintiff further distinguish this case from *Margolin.* This case involves claims against Occidental and APS based on distinct occurrences—the alleged conduct of an Occidental employee, over which APS had no control, and the alleged conduct of APS security personnel, over which Occidental had no control. *Margolin,* on the other hand, involved injury caused by a "concurrence" of conditions over which both New York Life and Park & Estate had control.

Similarly, *Hogeland v. Sibley* involved a claim for personal injuries by a customer of the defendant's department store who fell over a snow-covered concrete planter box located near the entrance to the store. The customer sued both the store owner (Sibley) and the shopping center owner (Berenson) who leased the premises to Sibley. Evidence at the trial revealed that the defendants had a mutual arrangement for snow removal from the area where the accident occurred. The jury found both defendants negligent and jointly liable, and allocated proportionate responsibility as between the two defendants at 60% for Berenson and 40% for Sibley. The Court of Appeals allowed Berenson's cross-claim against Sibley for contractual indemnification, based on the indemnity provision in the lease which provided:

> The Tenant [Sibley] agrees to indemnify and save harmless the Landlord [Berenson] from and against all claims of whatever nature arising from any act, omission or negligence of the Tenant, or Tenant's contractors, licensees, agents, servants or employees, or rising from any accident ... whatsoever caused to any person ... in or about the Tenant's demised premises, or

... occurring outside of the demised premises but within the Shopping Center development ... where such accident ... results ... from an act or omission on the part of ... Tenant.... This agreement shall include indemnity against any costs, expenses and liabilities incurred or in connection with any such claim or proceeding brought thereon, and the defense thereof.

*Hogeland v. Sibley, supra,* 42 N.Y.2d at 156–57, 397 N.Y.S.2d at 604, 366 N.E.2d at 264. The Court found that the broad inclusion of the language providing for indemnification against injury arising from "any accident ... whatsoever ... in or about the Tenant's demised premises" clearly included the sidewalk area outside the store, and evidenced the parties' intention to have Sibley indemnify Berenson for the type of harm that occurred.

Again, in this case, not only does the indemnification clause not contain the same type of broad language, but the injury is alleged to have occurred as a result of separate acts rather than as a result of a single condition over which both defendants had concurrent control.

Accordingly, based on the language and purpose of the contracts and purchase orders defining the obligations of the parties, as well as the surrounding facts and circumstances, I find no clearly implied intention of the parties that Occidental agreed to indemnify APS and Moss for damages arising from their own negligent performance of security services. APS and Moss have therefore failed meet their burden of establishing that Occidental is obligated as a matter of law to defend and indemnify them in this action.

## *CONCLUSION*

For the foregoing reasons, the motion for summary judgment by defendants APS and Moss (Item 290) should be denied. For these same reasons, Occidental's cross-motion to dismiss the third-party complaint against it for defense and indemnity (Item 297) should be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the plaintiffs and the defendants.

**SO ORDERED.**

DATED: Buffalo, New York

May 20, 1994