[776 NYS2d 260]

PATRICK CAVANAUGH, Plaintiff, v 4518 ASSOCIATES et al., Defendants, and AMBASSADOR CONSTRUCTION CO., INC., Defendant and Third-Party Plaintiff-Respondent. S&H CARPENTRY, Third-Party Defendant-Appellant.

First Department, May 11, 2004

APPEARANCES OF COUNSEL

*Ahmuty, Demers & McManus* (*Brendan T. Fitzpatrick* of counsel), for appellant.

*Ohrenstein & Brown, LLP* (*Kenneth M. Labbate* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal from the grant of a postverdict motion for contractual indemnification in favor of a tortfeasor found 70% at fault for the accident causing plaintiff's injuries against another tortfeasor, a third-party defendant, found 30% at fault. The sole issue presented is whether such an award violates General Obligations Law § 5-322.1.

Plaintiff was injured in an accident on February 2, 1998 during the course of an interior renovation in a building located at 620 Sixth Avenue in New York City when the scaffold on which he was working as a taper for Parwall Interiors, Inc. began to shift and fall forward, causing him to fall off the scaffold into a dumpster. 4518 Associates was the owner of the building, which was managed by Tishman Speyer Properties. Ambassador Construction Co., Inc., the general contractor for the renovation, had subcontracted the carpentry work to S&H Carpentry, which in turn, hired plaintiff's employer Parwall to perform the taping work. Plaintiff sued 4518 Associates, Tishman Speyer, Ambassador, S&H and another entity to recover for his injuries, alleging a violation of several provisions of the Labor Law, including section 240. Ambassador cross-claimed against S&H alleging the latter's negligence as the cause of plaintiff's injuries and also asserting that S&H would be liable to it "in the event and in the full amount of a recovery herein by the plaintiff or alternatively, for that portion thereof cause[d] by the relative responsibility of the defendant . . . S&H." S&H impleaded plaintiff's employer, Parwall.

Before trial, plaintiff, on the basis of Labor Law § 240 (1), moved for summary judgment against 4518 Associates, Tish-

man Speyer and Ambassador, none of which opposed the motion. Supreme Court awarded plaintiff partial summary judgment on liability; it also granted Tishman Speyer summary judgment on its claim for contractual indemnification against Ambassador, holding that the latter's project manager and its project supervisor "had duties which included supervision of the various subcontractors and supervision of the laborers."

The court denied Ambassador's summary judgment motion for contractual indemnification against S&H, in opposition to which S&H argued, inter alia, that Ambassador was actively negligent, holding that there was a "legitimate issue" as to whether the proper assembly of the scaffold was part of Ambassador's safety inspection responsibility. Finding insufficient information to resolve the issue, the court denied that part of Ambassador's motion based on S&H's breach of its contractual obligation to procure liability insurance naming Ambassador as an additional insured. Thereafter, at trial, in the midst of plaintiff's testimony, he discontinued his action against S&H. Ambassador's cross claim against S&H was converted to a third-party action.

The trial evidence showed that Ambassador contracted with S&H to install drywall partitions. As noted, S&H, in turn, subcontracted the taping of the partitions, work it had contracted to do, to Parwall. Plaintiff, the only Parwall worker at the site at the time, testified that his supervisor told him to use the scaffold in question, which was approximately six feet in height, that it had wheels but that its locks were not working and that he had complained to his foreman about this. Ambassador, the general contractor, had the responsibility "for exercising regulatory control over all subcontractors." It would schedule the work for the various trades; one of its representatives called S&H and asked that the tapers be sent to the site. Ambassador also held safety meetings and, as its project manager testified, if he saw an unsafe condition, he would stop the work. Since safety was part of Ambassador's inspections, its inspections would include the "pre-assembly of scaffolds" used by tapers. When Ambassador's project manager arrived at the accident scene he observed a baker's scaffold (presumably one on wheels) but it did not belong to Ambassador.

At the time of the accident, no one in a supervisory capacity from S&H, which was required to inspect the taping work but was not at the site every day, was present at the building. S&H also had the authority to stop the work if it observed an unsafe

condition, although Ambassador was primarily responsible for safety conditions at the job site. No one from S&H would direct Parwall's workers as to how they performed their work; it merely outlined the work that needed to be completed. S&H did not provide Parwall with any scaffolding; nor did it have any scaffolding at the site on the day of the accident.

At the conclusion of testimony, the trial court denied Ambassador's motion for a directed verdict on its breach of contract claim against S&H. The court reserved decision on the latter's motion for a dismissal of Ambassador's claims against it. In its jury charge, the court posed as the first issue for resolution the respective degree of fault of Ambassador and S&H. The court instructed the jurors that the general contractor and subcontractor had a duty to use reasonable care to make the workplaces under their control reasonably safe. If they did exercise control over a workplace, they were required to correct any unsafe condition that was known. If they exercised control, they were to conduct reasonable inspections to detect the existence of an unsafe condition. The court told the jury that as a general contractor Ambassador "owes a duty to make safe a place of work provided by it." The second issue for the jury's consideration was the amount of damages to be awarded to plaintiff.

The jury returned a verdict of $500,000 in plaintiff's favor against Ambassador and S&H, the only party defendants remaining in the case, apportioning the award 70% against Ambassador and 30% against S&H. Despite S&H's opposition on the ground that such indemnification would violate the General Obligations Law, the court subsequently granted so much of Ambassador's posttrial motion as sought contractual indemnification against S&H for the full amount of the jury award for the reason that because the Ambassador/S&H agreement contained an indemnification agreement and an insurance procurement provision "any finding of negligence on Ambassador's part in connection with" plaintiff's injuries was "totally irrelevant." Judgment to this effect was subsequently entered. S&H appeals from the order granting Ambassador's motion for contractual indemnification against it. Deeming its appeal as being from that part of the judgment that awards Ambassador contractual indemnification against it, we reverse.

Paragraph 6, as set forth in a purchase order, dated December 4, 1997, which constitutes the subcontract in question between Ambassador and S&H, provides that, "[t]o the fullest extent permitted by law," S&H shall "indemnify and hold harmless"

Ambassador against "all claims, damages, losses, and expenses, including, but not limited to attorneys fees, arising out of or resulting from the performance of the [w]ork" attributable to bodily injury or to property damage and, caused, in whole or in part, by any negligent act or omission of S&H, "regardless of whether or not it is caused in part by a party indemnified hereunder."

This agreement runs afoul of General Obligations Law § 5-322.1 (1), which, in pertinent part, provides:

> "A covenant, promise, agreement or understanding in, or in connection with . . . a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee . . . whether such negligence be in whole or in part, is against public policy and is void and unenforceable."

The Court of Appeals has spoken on the issue of whether General Obligations Law § 5-322.1 prohibits the enforcement of an agreement indemnifying a promissee for its own negligence. In *Brown v Two Exch. Plaza Partners* (76 NY2d 172 [1990]), where the trial evidence failed to demonstrate fault on the part of the general contractor, the Court held that "neither the wording nor intent of the statute is violated by allowing it to allocate responsibility for this unexplained accident through an indemnification provision" (76 NY2d at 180-181). The Court held that inasmuch as the general contractor's liability was solely statutory, based on the absolute liability provisions of Labor Law § 240 (1) and not upon any negligence on its part, the General Obligations Law prohibition against indemnifying a party for its own negligence was not implicated.

In *Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.* (89 NY2d 786 [1997]), the converse was true and the Court answered the question left open in *Brown*, i.e., "whether, and to what extent, an indemnification agreement between a general contractor and subcontractor can be enforced where the general contractor has been found partially negligent in an action brought by an employee of the subcontractor against the general" (*id.* at 789). The Court held that "because the agreements in question contemplate full, rather than partial, indemnifica-

tion, the agreements are unenforceable under General Obligations Law § 5-322.1 in the circumstances of these cases" (*id.* at 790; *see Dutton v Charles Pankow Bldrs.*, 296 AD2d 321 [2002], *lv denied* 99 NY2d 511 [2003]). In the two cases under consideration in *Itri Brick*, the general contractor/indemnitees in both instances had been negligent, in one, on a jury finding of negligence (*Stottlar v Ginsburg Dev. Corp.*, 89 NY2d 786 [1997]) and, in the other, on the basis of a stipulation (*Itri Brick*).

Similarly, in the instant case, Ambassador, the general contractor, was found negligent by the jury and, on the apportionment of fault, found 70% liable, a finding amply justified by the record. Its contract with Tishman Speyer required Ambassador to supervise and inspect all of the work. The testimony reflects that its project manager, present on the day of the accident, inspected Parwall's work, including the scaffolding, as part of its safety responsibility. On the other hand, S&H had no personnel present at the time of plaintiff's injury. The jury's finding of Ambassador's negligence, supported by the record, renders the indemnification provision of its contract with S&H void. The trial court, however, ignoring applicable law barring indemnification in cases where the indemnitee is itself negligent (*Gibson v Bally Total Fitness Corp.*, 1 AD3d 477 [2003]; *Sanford v Jonathan Woodner Co.*, 304 AD2d 813, 814 [2003]; *Puchalsky v Historic Travel Agency*, 236 AD2d 279, 280 [1997]), found Ambassador's negligence an irrelevancy, citing, as its rationale therefor, the fact that the Ambassador/S&H contract contained an indemnification agreement and an insurance procurement provision.

In an attempt to justify Supreme Court's failure to follow precedent and its rewriting of the General Obligations Law, Ambassador relies upon this Court's 1997 decision in *Santamaria v 1125 Park Ave. Corp.* (238 AD2d 259 [1997]) and a subsequent 2001 decision, *Juliano v Prudential Sec.* (284 AD2d 132 [2001] [*Juliano I*]), relying upon *Santamaria* as well as the Court of Appeals' decision in *Hogeland v Sibley, Lindsay & Curr Co.* (42 NY2d 153 [1977]), to support the position that the combination of an indemnification clause and an insurance-procurement provision in a contract allows a contractor to be indemnified for its own negligence.

This argument does not represent the current state of the law in New York. In *Brown v Two Exch. Plaza Partners* (*supra*), the Court of Appeals noted that the Legislature amended the General Obligations Law in 1981, four years after *Hogeland* was

decided, "to prohibit indemnity agreements in which owners or contractors sought to pass along the risks for their *own negligent actions* to other contractors or subcontractors, even if the accident was caused only in part by the owner's or contractor's negligence" (76 NY2d at 180). Clearly, General Obligations Law § 5-322.1 was enacted to void indemnification agreements that seek to exempt the indemnitee from liability based on negligence, irrespective of whether that negligence is wholly or only partially the cause of the injury (*see Gomez v National Ctr. for Disability Servs.*, 306 AD2d 103 [2003]; *Dutton v Charles Pankow Bldrs.*, 296 AD2d 321 [2002], *lv denied* 99 NY2d 511 [2003]).

In invoking the insurance procurement provision in the Ambassador/S&H contract to avoid this binding precedent, Ambassador blurs the clear distinction between such a provision and indemnification clauses. These provisions are separate and distinct. In *Juliano v Prudential Sec.* (287 AD2d 260 [2001] [*Juliano II*]), decided in 2001, this Court, in recalling and vacating its ruling in *Juliano I*, held that the two clauses were not to be coupled and, while conceding that *Santamaria*, upon which *Juliano I* relied, could be read to the contrary, *Santamaria* should be "confine[d] . . . to its facts" (*id.* at 262). The Fourth Department has similarly held that a contract to procure insurance " 'is clearly distinct from and treated differently [from] an agreement to indemnify' " (*Moll v Wegmans Food Mkts.*, 300 AD2d 1041, 1042 [2002] [citations omitted]).

In *Kinney v Lisk Co.* (76 NY2d 215 [1990]), the Court of Appeals set forth the distinction between the two agreements, reiterating that the General Obligations Law rendered "void and unenforceable any provision or agreement in connection with building construction 'purporting to *indemnify or hold harmless the promisee*' " against its own negligence (*id.* at 218). The Court noted that the General Obligations Law, however, made no mention of insurance-procurement provisions (*id.*), holding that while an indemnification clause relieves the promisee of liability, an agreement to procure insurance anticipates that the promisee will continue to be responsible for its own negligence, for which the promisor is obligated to furnish insurance (*id.*). As the Court held, this is the distinction that rendered an indemnification agreement violative of the General Obligations Law:

> "Moreover, this particular distinction is what renders indemnification, but not insurance-

procurement, agreements violative of the public policies underlying General Obligations Law § 5-322.1. While an agreement purporting to hold an owner or a general contractor free from liability for its own negligence undermines the strong public policy of placing and keeping responsibility for maintaining a safe workplace on those parties (*see, e.g.*, Labor Law §§ 200, 240), the same cannot be said for an agreement which simply obligates one of the parties to a construction contract to obtain a liability policy insuring the other" (*id.* [citations omitted]).

In the face of such a clear delineation of the difference between an indemnification provision and an insurance-procurement clause, and the tacit recognition by this Court in *Juliano II* of its error in *Santamaria*, we reject Supreme Court's coupling of the two clauses so as to avoid the application of General Obligations Law § 5-322.1 to the facts of this case and hold that Ambassador's indemnification claim is barred as offensive to public policy in violation of section 5-322.1. To the extent that *Barnes v New York Mercantile Exch.* (2 AD3d 184 [2003]) held to the contrary, that decision has been recalled and vacated (7 AD3d 304 [2004]).

While Ambassador noticed an appeal from the judgment to the extent of challenging the verdict in plaintiff's favor as against the weight of the evidence, it failed to perfect the appeal. Ambassador, in its respondent's brief on S&H's appeal, challenges the verdict as against the weight of the evidence but only with respect to the apportionment of liability against it, a matter solely between Ambassador and S&H. Although the issue is not properly before us, the claim is devoid of merit. The apportionment finds ample support in the record.

Accordingly, the appeal by third-party defendant S&H Carpentry from the order of the Supreme Court, New York County (E. Michael Kavanagh, J.), entered on or about April 4, 2002, which, after a jury trial, granted defendant and third-party plaintiff Ambassador Construction Co., Inc.'s posttrial motion for a directed verdict for contractual indemnification against S&H, deemed an appeal from that part of the ensuing judgment, same court and Justice, entered December 10, 2002, awarding Ambassador judgment upon its contractual indemnification claim against S&H, and, so considered, said part of the judgment should be reversed, on the law, with costs and disbursements, and said claim dismissed.

BUCKLEY, P.J., TOM and SAXE, JJ., concur.

Appeal from order, Supreme Court, New York County, entered on or about April 4, 2002, deemed an appeal from the ensuing judgment, same court, entered December 10, 2002, and said part of the judgment reversed, on the law, with costs and disbursements, and Ambassador's contractual indemnification claim against S&H dismissed.